# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BRIDGEPORT HOSPITAL, *et al.*, | ) | |
| | ) | |
| Plaintiffs; | ) | |
| | ) | |
| v. | ) | Civ. Action No. 20-1574 (CJN) |
| | ) | |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>DEFENDANT'S BRIEF ON REMEDIES</u>**

# TABLE OF CONTENTS

**Table of Authorities** ...................................................................................................... ii

**Introduction** ................................................................................................................. 1

**Background** ................................................................................................................. 1

**Argument** .................................................................................................................... **4**

I.   Remand Without Vacatur Is the Appropriate Remedy ...............................................4

II.  Any Remedy Should Be Directed to Plaintiffs' Specific Challenge, and Be No
Broader Than Necessary to Provide Them with Relief ...........................................7

III.  The Court Lacks Jurisdiction to Order the Additional Specific Relief Requested By
Plaintiffs .............................................................................................................10

IV.  An Award of Interest Under 42 U.S.C. § 1395oo(f)(2) Would Be Premature .....................13

V.  Plaintiffs Fail to Demonstrate a Basis for Awarding Interest Under 42 U.S.C.
§ 1395g(d) .........................................................................................................13

**Conclusion** ................................................................................................................. **15**

**Appendix** .................................................................................................................... **17**

# TABLE OF AUTHORITIES

## **Cases**

Allied-Signal, Inc. v. United States Nuclear Regulatory Commission,
   988 F.2d 146 (D.C. Cir. 1993) ................................................................................. 4

*Allina Health Servs. v. Sebelius*,
   746 F.3d 1102 (D.C. Cir. 2014)......................................................................... 7, 11

Am. Great Lakes Ports Ass'n v. Zukunft,
   301 F. Supp. 3d 99 (D.D.C. 2018) ......................................................................... 5

*American Hospital Association v. Azar*,
   385 F. Supp. 3d 1 (D.D.C. 2019) ............................................................. 6, 7, 8, 11

*Bayshore Cmty. Hosp. v. Azar*,
   325 F. Supp. 3d 18 (D.D.C. 2018) ......................................................................... 5

*Baystate Med. Ctr. v. Leavitt*,
   587 F. Supp. 2d 37 (D.D.C. 2008) ....................................................................... 12

*Bennett v. Donovan*,
   703 F.3d 582 (D.C. Cir. 2013) ............................................................................. 11

*Califano v. Yamasaki*,
   442 U.S. 682 (1979)................................................................................................ 9

*California v. Texas*,
   141 S. Ct. 2104 (2021)............................................................................................ 8

*Citrus HMA, LLC v. Becerra*,
   No. 20cv707, 2022 WL 1062990 (D.D.C. Apr. 8, 2022)..................................... 5, 7

*Cnty. of Los Angeles v. Shalala*,
   192 F.3d 1005 (D.C. Cir. 1999) ....................................................................... 9, 11

*Cobell v. Norton*,
   240 F.3d 1081 (D.C. Cir. 2001) ........................................................................... 12

*Cosgrove v. Sullivan*,
   999 F.2d 630 (2d Cir. 1993).......................................................................... 14, 15

*D.A.M. v. Barr*,
   486 F. Supp. 3d 404 (D.D.C. 2020) ....................................................................... 9

Dep't of Homeland Sec. v. New York,
   140 S. Ct. 599 (2020)............................................................................................ 10

*Empire Health Found. v. Becerra*,
   No. 20cv2149, 2022 WL 370559 (D.D.C. Feb. 8, 2022)...................................... 12

*Empire Health Found. v. Burwell*,
   209 F. Supp. 3d 261 (D.D.C. 2016) ........................................................ 2, 3

*Fertilizer Inst. v. E.P.A.*,
   935 F.2d 1303 (D.C. Cir. 1991) ................................................................ 10

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ............................................................................... 9

Global Van Lines, Inc. v. I.C.C.,
   804 F.2d 1293 .............................................................................................. 5

Good Samaritan Hosp. v. Shalala,
   508 U.S. 402 (1993) .................................................................................... 4

*Libr. of Cong. v. Shaw*,
   478 U.S. 310 (1986) .................................................................................. 15

*Maine Med. Ctr. v. Burwell*,
   841 F.3d 10 (1st Cir. 2016) ...................................................................... 13

*Meinhold v. U.S. Dep't of*,
   Def., 34 F.3d 1469 (9th Cir. 1994) ............................................................ 9

Methodist Hosp. of Sacramento v. Shalala,
   38 F.3d 1225 (D.C. Cir. 1994) ................................................................... 9

Murphy v. Nat'l Collegiate Athletic Ass'n,
   138 S. Ct. 1461 (2018) ............................................................................... 8

N. Carolina Fisheries Ass'n, Inc. v. Gutierrez,
   550 F.3d 16 (D.C. Cir. 2008) ..................................................................... 5

Nat'l Med. Enterprises, Inc. v. Sullivan,
   960 F.2d 866 (9th Cir. 1992) .................................................................... 15

Nebraska Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.,
   435 F.3d 326 (D.C. Cir. 2006) ................................................................... 9

*Palisades Gen. Hosp. Inc. v. Leavitt*,
   426 F.3d 400 (D.C. Cir. 2005) ......................................................... 4, 11, 12

Russell-Murray Hospice, Inc. v. Sebelius,
   724 F. Supp. 2d 43 (D.D.C. 2010) ............................................................. 9

*Shands Jacksonville Med. Ctr. v. Burwell*,
   139 F. Supp. 3d 240 (D.D.C. 2015) ................................................... passim

Shands Jacksonville Med. Ctr., Inc. v. Azar,
   366 F. Supp. 3d 32 (D.D.C. 2018) ............................................................. 4

Sugar Cane Growers Co-op. of Fla. v. Veneman,
   289 F.3d 89 (D.C. Cir. 2002) ................................................................... 10

*Tucson Med. Ctr. v. Sullivan*,
  947 F.2d 971 (D.C. Cir. 1991) ................................................................................. 13

United States v. Louisiana,
  446 U.S. 253 (1980) ................................................................................................ 13

## **Statutes**

5 U.S.C. ch. 7 ............................................................................................................... 8

42 U.S.C. § 1395g(d) ....................................................................................... 13, 14, 15

42 U.S.C. § 1395oo ....................................................................................................... 9

42 U.S.C. § 1395oo(a) ................................................................................................... 3

42 U.S.C. § 1395oo(b) ................................................................................................... 3

42 U.S.C. § 1395oo(f) ................................................................................................... 8

42 U.S.C. § 1395oo(f)(1) ............................................................................................... 8

42 U.S.C. § 1395oo(f)(2) .......................................................................................... 8, 13

Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 117(a)(1),
  96 Stat. 324, 354–55 (1982) ................................................................................... 14

## **Rules and Regulations**

42 C.F.R. § 405.1803 ..................................................................................................... 2

42 C.F.R. § 405.378 ..................................................................................................... 14

47 Fed. Reg. 54,811 (Dec. 6, 1982) ............................................................................ 14

74 Fed. Reg. 47,458 (Sept. 16, 2009). ........................................................................ 15

## INTRODUCTION

Following this Court's decision granting the plaintiff hospitals' Motion for Summary Judgment and denying the Secretary's Cross-Motion for Summary Judgment, Mem. Op., ECF No. 28, the Court ordered additional briefing addressing "the appropriate remedy in light of the Memorandum Opinion." Order, ECF No. 29. The Secretary respectfully submits this brief in response.

Plaintiffs seek vacatur, additional specific relief, and interest. *See* Compl. ¶ 7, ECF No. 1; Pl.'s Remedies Br. 1–5, ECF No. 30. None are appropriate remedies here, for the reasons discussed below. Instead, the Court should remand the matter for further proceedings consistent with the Court's Memorandum Opinion.

## BACKGROUND

While the Court is already generally familiar with the background of this matter, *see* Mem. Op. 1–9, the Secretary highlights here particular/additional background information relevant to the issue of remedy.

Under the Inpatient Prospective Payment System (IPPS), Medicare pays for inpatient hospital services on a rate per discharge basis that varies according to the diagnosis related group to which a beneficiary's stay is assigned. Generally, the Secretary determines how much a hospital should be paid for treating each Medicare patient by performing the following calculation (where SA = standardized amount; labor% = the proportion of the standardized amount attributable to wages and wage-related costs; non-labor% = the proportion of the standardized amount not attributable to labor-related costs; WI = wage index; and MS-DRG Weight = the weight assigned to a particular Medicare severity diagnosis related group):

**[[SA\*(non-labor%) + (SA\*(labor%)\*WI)] \* (MS-DRG Weight)] = Adjusted Base Rate] + [adjustments for qualifying hospitals, such as the indirect medical education adjustment] + [adjustments for patient transfers] = Payment**

1

*See* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/html/medicare-payment-systems.html#Acute (last visited May 9, 2022).[1] This formula is applied to each patient discharge; an IPPS participating hospital will have hundreds or thousands such discharges each year. At the end of each cost year, "providers participating in Medicare submit cost reports to their fiscal intermediaries." *Empire Health Found. v. Burwell*, 209 F. Supp. 3d 261, 264 (D.D.C. 2016). Medicare contractors review the cost reports and inform the provider of the total amount of Medicare reimbursement to which it is entitled, in a document known as a Notice of Program Reimbursement (NPR). *Id.*; *see* 42 C.F.R. § 405.1803.

Here, plaintiffs did not wait for an NPR to bring their challenge; instead, following publication of the IPPS Final Rule for federal fiscal year (FFY) 2020, they brought a challenge to their IPPS rates based on the FFY 2020 policy that reduced the standardized amount to offset the low wage index hospital policy implemented for that year. They appealed to the Provider Reimbursement Review Board (PRRB) and sought expedited judicial review (EJR) for the following issue:

> [W]hether the Hospitals' FFY 2020 standardized amount and hospital specific operating IPPS [inpatient prospective payment system] payment rate[s] were improperly reduced by approximately 0.2016% for FFY 2020.

AR 2, 150, 307, 490, 668, 849 (alterations in original).[2] Although this issue involved the broader legal question of the validity of the rate-setting policy—a question that the Board was without

---

[1] This formula covers only the operating portion of the IPPS payment; it does not cover the capital IPPS payments. The operating portion payment amount is subject to further adjustments as applicable, for example under the Hospital Value-Based Purchasing (VBP) Program, Hospital Readmissions Reduction Program (HRRP), and Hospital-Acquired Condition (HAC) Reduction Program. *Id.* Hospitals in Alaska and Hawaii receive a cost of living adjustment (COLA) to their non-labor related share.

[2] This case involves six separate group appeals. The issue for which EJR was requested was stated identically for each of them. AR 2, 150, 307, 490, 668, 849. Unless otherwise noted, cited

authority to decide, *see* AR 10, 158, 315, 498, 676, 857—they framed the issue as a challenge to the reduction of *their* ("the Hospitals'") rates, not as a broader challenge to the reduction of the standardized amount for all IPPS-participating hospitals.[3] *Id.*; *see also* AR 19, 167, 323, 507, 685, 866 ("As set forth in the initial appeal request, and as discussed below, the Hospitals are challenging *their* Medicare Hospital [IPPS] payments for [FFY] 2020 on the grounds that those payments were (and continue to be) improperly understated as a result of the reduction to the standardized amount for FFY 2020, which the Secretary … unlawfully imposed as part of his new policy increasing the Area Wage Index ('AWI') values of hospitals with an AWI value in the lowest quartile." (emphasis added)).[4]

To meet the amount-in-controversy necessary to establish the Board's jurisdiction under 42 U.S.C. § 1395oo(b), plaintiffs utilized "estimates" of "expected IPPS reimbursement" for FFY 2020. The Board found that it had jurisdiction based on "the estimated amount in controversy," and noted that "[t]he estimated amount in controversy is subject to recalculation by the Medicare contractor for the actual final amount in each case." AR 8, 156, 313, 496, 674, 855.

The Medicare contractors have yet to calculate the amount in controversy. Indeed, as of this date, the actual amount in controversy remains unknown in part because the NPR process for FFY 2020 remains ongoing. Medicare Administrative Contractors (MACs) have not yet issued NPRs for the plaintiff hospitals. *See* Appendix (chart showing current status for each plaintiff

---

portions of the adjudication record have previously been filed with the Court. *See* Joint Appendix, ECF No. 23.

[3] Plaintiffs focus here makes sense because 42 U.S.C. § 1395oo(a) only allows them to seek a PRRB hearing with respect to their payments, and because they lack standing in any event to challenge the reduction of rates of other non-plaintiff hospitals.

[4] Each of the six requests for EJR contained the quoted language. These portions of the adjudication record were not included in the Joint Appendix previously filed with the Court, and thus are being provided as an exhibit to this brief.

hospital of cost reports based on FFY 2020).

## ARGUMENT

### I.    Remand Without Vacatur Is the Appropriate Remedy

"Remand without vacatur" is an administrative law remedy that allows courts reviewing agency actions to leave the action in place while the agency fixes the defect. In deciding whether vacatur of either or both of the two challenged policies (the low wage index hospital policy and the budget neutrality policy) is warranted, the Court must apply the two-prong standard articulated by the D.C. Circuit in *Allied-Signal, Inc. v. United States Nuclear Regulatory Commission*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Under this standard, the Court considers both "the seriousness of the [agency] order's deficiencies (and thus the extent of doubt whether the agency chose correctly)" and "the disruptive consequences of an interim change that may itself be changed." *Id.* "There is no rule requiring either the proponent or opponent of vacatur to prevail on both factors." *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270 (D.D.C. 2015).

Here, the prudent option would be a remand without vacatur to the Secretary "for further action consistent with [the Court's] opinion." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). Remand without vacatur is consistent with the "substantial deference that Courts owe to the Secretary [of Health and Human Services] in the administration of such a 'complex statutory and regulatory regime.'" *Shands Jacksonville Med. Ctr., Inc. v. Azar*, 366 F. Supp. 3d 32 (D.D.C. 2018) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 404 (1993)), *aff'd*, 959 F.3d 1113 (D.C. Cir. 2020). Vacating either or both of the challenged policies would create a regulatory vacuum with respect to IPPS rates for FY 2020. The agency should not be forced to craft a remedy against the backdrop of regulatory uncertainty, particularly given that the agency is in the midst of finalizing payments for FY 2020 and given the deference owed the

agency in regulating Medicare.

Even if the first *Allied-Signal* factor weighed in favor of vacatur here given the Court's identification of legal errors, that factor would not be dispositive. *Shands Jacksonville Med. Ctr.*, 139 F. Supp. 3d at 270. If it were dispositive, the answer would always be vacatur and remand, thereby swallowing the rule. Instead, "resolution of the question turns on the Court's assessment of the overall equities and practicality of the alternatives," *id.*, and courts have often remanded without vacatur notwithstanding the seriousness of the agency order's deficiencies. *See Citrus HMA, LLC v. Becerra*, No. 20cv707, 2022 WL 1062990, at *10 (D.D.C. Apr. 8, 2022) (remanding without vacatur based on the second *Allied-Signal* factor); *Am. Great Lakes Ports Ass'n v. Zukunft*, 301 F. Supp. 3d 99, 105 (D.D.C. 2018), *aff'd sub nom. Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510 (D.C. Cir. 2020) (remanding without vacatur even though the first *Allied-Signal* factor favored vacatur); *Shands Jacksonville Med. Ctr.*, 139 F. Supp. 3d at 270 (same); *see also N. Carolina Fisheries Ass'n, Inc. v. Gutierrez*, 550 F.3d 16, 20 (D.C. Cir. 2008) (expressing preference for a "simple remand" (without vacatur) in a case in which the agency had been found to have violated a statute); *Global Van Lines, Inc. v. I.C.C.*, 804 F.2d 1293, 1305 n. 95 (D.C. Cir. 1986) ("We agree with the Commission that when an agency committing an error of law has discretion to determine in the first instance how it should be rectified, the proper course is to remand the case for further agency consideration in harmony with the court's holding.") (citing cases); *Bayshore Cmty. Hosp. v. Azar*, 325 F. Supp. 3d 18, 24–25 (D.D.C. 2018) (remanding without vacatur where the agency had committed a legal error because "vacatur … exceeds what is required to resolve the parties' dispute").

Vacating either or both of the low wage index hospital policy and the budget neutrality policy would have potentially disruptive consequences, given the current status of the payment

process for FFY 2020, the statute's budget neutrality requirements, and the potential consequences to other hospitals. Plaintiffs do not appear to argue that they are entitled to a vacatur of the low wage index hospital policy. But even a vacatur limited to the budget neutrality policy, which plaintiffs request, would have unduly disruptive consequences given the current stage of the payment process based on the FFY 2020 rates. Were the Court to vacate the policy at this stage, it would create a regulatory vacuum and complicate the Secretary's ability to effectuate the Court's legal holding. Because of these kinds of problems, courts in this district have declined to vacate payment rules in similar circumstances. In *Shands Jacksonville Medical Center*, the court declined to vacate Medicare's FFY 2014 IPPS rule, notwithstanding serious doubts about whether the rule properly reduced payments to hospitals for almost all inpatient services by 0.2%. 139 F. Supp. 3d at 268–69, 271. The court based its decision on the "disruptive consequences" that would be caused by vacatur, including the difficulty of recouping already paid funds and limits on the retroactive application of rules. *Id.* at 269–271. And in *American Hospital Association v. Azar*, 385 F. Supp. 3d 1 (D.D.C. 2019), judgment entered, No. 18cv2084, 2019 WL 3037306 (D.D.C. July 10, 2019), *reversed on other (merits) grounds*, 967 F.3d 818 (D.C. Cir. 2020), *cert. granted*, 141 S .Ct. 2883 (2021), the court decided not to vacate a rule that included what the court had found to be unlawful reimbursement rates because of a concern that the Secretary might "not be able to retroactively adjust … [Medicare] payments, at least not in a budget neutral manner, should the [rule at issue] be vacated." 385 F. Supp. 3d at 15. The same considerations apply here.

Plaintiffs attempt to distinguish between cases in which APA deficiencies were only procedural in nature, and cases where, like here, the Court found substantive legal errors. Pls.' Remedies Br. 2–3. But contrary to plaintiffs' assertion, the application of the *Allied-Signal*

factors and the remedy of remand without vacatur are not limited to circumstances where an agency has committed procedural errors under the APA. For example, remand without vacatur was the remedy in the recently decided *Citrus HMA* case. 2022 WL 1062990, at *10. In that case, as here, plaintiff hospitals challenged their payment rates set by the FFY 2020 IPPS final rule; specifically, they contended that the Secretary violated the Medicare atatute by calculating a rural floor that was different from the rural wage index. *Id.* at *6. The Court held that the Medicare statute unambiguously barred the Secretary's rural-floor approach. *Id.* at *9. Nonetheless, the Court determined that remand without vacatur was appropriate. *Id.* at *10. The court observed that "the IPPS system must operate on a 'budget-neutral' basis, and … a court order vacating the FY 2020 rule could require unscrambling and revising interdependent budget-neutral reimbursement decisions already made, since any amount of gain to Plaintiffs' hospitals that might result from the Court's order might have to be offset by recoupments from other hospitals nationwide." *Id.* at *10. The Court credited the Secretary's arguments regarding the disruptive effect of vacatur, and "agree[d] that the Secretary should address the appropriate adjustment of Plaintiffs' reimbursement rates in the first instance." *Id.*; *see also id.* (citing *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014)); *Shands Jacksonville Med. Ctr.*, 139 F. Supp. 3d at 270; *Am. Hosp. Assoc.*, 385 F. Supp. 3d at 11–15. Likewise here, the Court should remand without vacatur and allow the agency to craft a remedy without the unnecessary confusion and disruption that vacatur would entail.

## II.   Any Remedy Should Be Directed to Plaintiffs' Specific Challenge, and Be No Broader Than Necessary to Provide Them with Relief

While the case-at-bar involves the legal issue of the propriety of the underlying policies, the issue for which the plaintiffs sought expedited judicial review is limited to the reduction of *their* payment rates. *See* AR 2, 150, 307, 490, 668, 849 (quoting plaintiffs' requests for EJR, and

identifying the issue they are appealing as whether *their* FFY 2020 standardized amounts were improperly reduced). Thus, the question properly before this Court is whether the Secretary improperly reduced the standardized amounts for *these* hospitals. Should the Court determine that vacatur is necessary, it should limit its vacatur order accordingly, *i.e.*, by vacating the reduction to the plaintiff hospitals' FFY 2020 standardized amount, and remanding for further proceedings consistent with the Court's Memorandum Opinion. *See id.*; *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) ("Remedies … ordinarily 'operate with respect to specific parties,'" (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1486 (2018) (THOMAS, J., concurring)). Otherwise the Secretary would be forced to rework the rule nationwide, even for hospitals who have not challenged it and may be relying on it, and to do so against the backdrop of regulatory uncertainty.

This case differs from a typical Administrative Procedure Act case that directly challenges a policy. This is so because of the channeling and judicial review provisions of 42 U.S.C. § 1395oo(f)(2). Those provisions reinforce the notion that plaintiffs are challenging only the application of the policies as to them, and are seeking relief against the policies as applied to them. *See* 42 U.S.C. § 1395oo(f)(1) (requiring appeal to the PRRB as a prerequisite to judicial review); *id.* § 1395oo(a) (providing that a hospital may obtain a PRRB hearing with respect to *the hospital's* payment). While 42 U.S.C. § 1395oo(f)(1) provides that the "applicable provisions" of the Administrative Procedure Act, 5 U.S.C. ch. 7, shall furnish the standard under which judicial review should be conducted, the entirety of 42 U.S.C. § 1395oo(f) makes clear that the issues for review arise in the context of a challenge akin to an individual adjudication. Any remedy should be tailored accordingly. A broader remedy such as vacatur of the underlying policy(ies) as applied to all IPPS hospitals—a remedy akin to a nationwide injunction—is both at

8

odds with 42 U.S.C. § 1395oo and broader than necessary to afford plaintiffs full relief. *See* 42

U.S.C. § 1395oo; *Russell-Murray Hospice, Inc. v. Sebelius*, 724 F. Supp. 2d 43, 60 (D.D.C.

2010) ("The Supreme Court has … cautioned that 'injunctive relief should be no more

burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'"

(quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *D.A.M. v. Barr*, 486 F. Supp. 3d 404,

415 (D.D.C. 2020) (distinguishing between "having an invalid rule applied … in future

adjudications" and individual adjudications decided in the past based on the invalid rule);

*Nebraska Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330

(D.C. Cir. 2006) (noting that injunctive relief "must be narrowly tailored to remedy the specific

harm shown"); *Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 (9th Cir. 1994) (concluding

that the district court erred in enjoining the defendant from applying the invalid regulation to all

military personnel (citing *Califano*, 442 U.S. at 702)); *see also Gill v. Whitford*, 138 S. Ct. 1916,

1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury.").

      Further, nationwide vacatur would be even more disruptive than a vacatur limited to the

plaintiffs themselves. The disruption caused by the regulatory vacuum described above would be

magnified. It would affect other hospitals and could have a significant adverse effect on hospitals

that may have assumed the finality of their prospectively determined FY 2020 wage index values

and rates during the COVID-19 Public Health Emergency. *See Methodist Hosp. of Sacramento v.

Shalala*, 38 F.3d 1225, 1233 (D.C. Cir. 1994) (upholding policy that denied retroactive effect to

revised wage index used in determining Medicare reimbursement rates, and observing that "a

prospective-only policy preserves the expectations of all parties in the PPS system and facilitates

the economic incentives that Congress intended"); *Cnty. of Los Angeles v. Shalala*, 192 F.3d

1005, 1011 (D.C. Cir. 1999) (observing that prospective nature of IPPS "promotes certainty and

predictability of payment"). The "overall equities and practicality of the alternatives," weighs in favor of directing any remedy to the plaintiffs. *See Shands Jacksonville Med. Ctr.*, 139 F. Supp. 3d at 270; *see also Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002) (broad vacatur would be "an invitation to chaos" because "[t]he egg has been scrambled"); *Fertilizer Inst. v. E.P.A.*, 935 F.2d 1303, 1312 (D.C. Cir. 1991) ("[W]hen equity demands, an unlawfully promulgated regulation can be left in place while the agency provides the proper … remedy.").

Nationwide relief would be particularly inappropriate here given ongoing litigation in the Central District of California involving challenges to the same rate-setting policies at issue here. *Kaweah Delta v. Becerra*, No. 20cv6464 (C.D. Cal.). If the government prevails in the Central District of California case, nationwide relief here would render that victory meaningless as a practical matter, impeding the "airing of competing views" by "multiple judges and multiple circuits." *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Mem.) (Gorsuch, J., concurring) ("The traditional system of lower courts issuing interlocutory relief limited to the parties at hand . . . . encourages multiple judges and multiple circuits to weigh in only after careful deliberation, a process that permits the airing of competing views that aids this Court's own decisionmaking process."), *modification denied*, 140 S. Ct. 2709 (2020).

## III. The Court Lacks Jurisdiction to Order the Additional Specific Relief Requested By Plaintiffs

Plaintiffs argue for "make-whole relief," including not only vacatur of the budget neutrality policy portion of the FY 2020 IPPS rule, but also a Court order directing "the Secretary to make the additional FFY 2020 IPPS payments due to the Hospitals as a result of reversing the effect of the Payment Reduction." Pls.' Remedies Br. 1. Additionally, plaintiffs assert that the Court should "retain post-remand jurisdiction to assure that the Secretary promptly

fulfills his further responsibilities." *Id.* at 5.

The Court lacks jurisdiction to order the specific relief requested by plaintiffs, and it would be error for "the court to retain jurisdiction to devise a specific remedy for the Secretary to follow." *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999). "Unlike a district court managing a 'garden variety civil suit,' a district court reviewing a final agency action 'does not perform its normal role but instead sits as an appellate tribunal.'" *Palisades Gen. Hosp.*, 426 F.3d at 403 (quoting *Cnty. of Los Angeles*, 192 F.3d at 1011. "Thus, under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *Id.* (internal quotation and citation omitted); *see also id.* (rejecting plaintiffs' contention that they were "entitled to make-whole relief"); *Allina Health Servs.*, 746 F.3d at 1111 (explaining that the district court "erred by directing the Secretary how to calculate the hospitals' [disproportionate share hospital] reimbursements, rather than just remanding after identifying the error"). As the Court of Appeals explained in *County of Los Angeles v. Shalala*, "[o]nce … the district court [holds] that the Secretary had misinterpreted § 1395ww(d)[], it should … remand[] to the Secretary for further proceedings consistent with its conception of the statute." 192 F.3d at 1011; *see also Shands Jacksonville Med. Ctr.*, 959 F.3d 1118 ("Even when a court sets aside an unlawful agency action under the APA, it is ordinarily 'the prerogative of the agency to decide in the first instance how best to provide relief.'" (quoting *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013)).

Plaintiffs seek to impose an arbitrary 60-day deadline for the "recalculat[ion] of the Hospitals' FFY 2020 IPPS payments." *See* Pls.' Remedies Br. at 5. Not only does such timeframe not make sense in this context—where the payment process remains ongoing and the

hospitals' cost reports are currently undergoing review and pending final determination of the total amount of reimbursement due for FFY 2020—but also such proposed timeframe fails to consider the amount of work and time required for the Secretary to issue instructions to his contractors in the first instance and for the contractors to implement those instructions. Correcting for an improper reduction to the plaintiffs' standardized amount will take time and effort because the standardized amount is itself a component of a larger formula used for determining payment on a per-patient-discharge basis. This work simply cannot be completed within the 60 days proposed by plaintiffs. Nor have plaintiffs provided a valid basis for the imposition of a deadline here. The Court should reject their request for specific "make-whole" relief. *See Palisades Gen. Hosp.*, 426 F.3d at 403.

Likewise, the Court should reject plaintiffs' request that the Court retain jurisdiction "to assure that the Secretary promptly fulfills his further responsibilities." Pls.' Remedies Br. 5. While the Court "has the discretion to retain jurisdiction over a case pending completion of a remand," exercise of that discretion is "typically reserved for cases alleging unreasonable delay of agency action or failure to comply with a statutory deadline, or for cases involving a history of agency noncompliance with court orders or resistance to the fulfillment of legal duties." *Baystate Med. Ctr. v. Leavitt*, 587 F. Supp. 2d 37, 41 (D.D.C. 2008) (citing *Cobell v. Norton*, 240 F.3d 1081, 1109 (D.C. Cir. 2001)). This case does not involve a claim of unreasonable delay or a history of agency noncompliance with court orders. And, in any event, "the agency is entitled to the presumption that it will discharge its duties in good faith." *See, e.g.*, *Empire Health Found. v. Becerra*, No. 20cv2149, 2022 WL 370559, at *5 (D.D.C. Feb. 8, 2022). Retention of jurisdiction here is thus not warranted. *See id.*

**IV.     An Award of Interest Under 42 U.S.C. § 1395oo(f)(2) Would Be Premature**

Consistent with the appropriate remedy of remanding this matter to the Secretary for further proceedings in light of the Court's Memorandum Opinion, it would be premature for the Court to issue an award of interest at this time. Defendant recognizes that plaintiffs are a "prevailing party" for purposes of section 1395oo(f)(2), and as such "the amount in controversy shall be subject to annual interest." 42 U.S.C. § 1395oo(f)(2). But plaintiffs proceeded before the PRRB based on an "estimated" (not actual) amount in controversy. The Court should allow the Secretary to determine the amount in controversy in the first instance. *See Maine Med. Ctr. v. Burwell*, 841 F.3d 10, 16 (1st Cir. 2016) ("Since the district court had to remand to the agency to determine the precise amounts due to the Hospitals, an award of interest [under 42 U.S.C. § 1395oo(f)(2)] would have been premature.").

**V.     Plaintiffs Fail to Demonstrate a Basis for Awarding Interest Under 42 U.S.C. § 1395g(d)**

Bedrock sovereign immunity principles apply to claims for the award of interest under the Medicare statute. "There is no dispute that the doctrine of sovereign immunity limits [a party's] rights to interest on claims for Medicare reimbursement to that which is expressly authorized by statute." *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 979 (D.C. Cir. 1991); *United States v. Louisiana*, 446 U.S. 253, 264–65 (1980). As with other waivers of sovereign immunity, "[s]uch a waiver must be strictly construed in favor of the government." *Tucson Med. Ctr.*, 947 F.2d at 979.

Plaintiffs invoke 42 U.S.C. § 1395g(d) as an alternative basis for their requested award of interest, but they wholly fail to explain or demonstrate its applicability here. Section 1395g(d) reads:

> Whenever a *final determination* is made that the *amount of payment* made under this part to a provider of services was in excess of or less than *the amount of*

> *payment that is due*, and payment of such excess or deficit is not made (or
> effected by offset) within 30 days of the date of the determination, interest shall
> accrue on the balance of such excess or deficit not paid or offset (to the extent that
> the balance is owed by or owing to the provider) at a rate determined in
> accordance with the regulations of the Secretary of the Treasury applicable to
> charges for late payments.

42 U.S.C. § 1395g(d) (emphasis added).  This statutory interest provision was enacted as section

117(a)(1) of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-

248, 96 Stat. 324, 354–55 (1982), and the legislative history demonstrates that Congress was

concerned that providers and suppliers had little or no incentive to refund overpayments to the

government, because interest was not charged to these amounts. Congress was less concerned

about interest on underpayments. *See Cosgrove v. Sullivan*, 999 F.2d 630, 633 (2d Cir. 1993)

("Congress was thus concerned with facilitating the recoupment of overpayments, rather than

underpayments.").

        The Secretary published a final rule implementing Section 117 of TEFRA in December

1982.  47 Fed. Reg. 54,811 (Dec. 6, 1982).  That rule recognizes the important distinction

between interest on the routine adjustment of ordinary underpayments and overpayments and

disputes arising after a final cost report that must be adjudicated before the PRRB for the

provider to receive interest.  Accordingly, 42 C.F.R. § 405.378(i) provides that the

reimbursement authority of section 1395g(d) "do[es] not apply to the time period for which

interest is payable under . . . this chapter because the provider  seeks judicial review of a decision

of the Provider Reimbursement Review Board." *Id.* Thus, the rule recognizes the fundamental

dichotomy between interest on ordinary underpayments governed by section 1395g(d) and

claims for interest in cases brought before the Board, where providers are limited to the waiver

of sovereign immunity contained in section 1395oo(f)(2).

        The Secretary has also construed the statutory requirement for the determination of "the

amount of payment," 42 U.S.C. § 1395g(d), to require that amount be for a sum certain—which is not the case here where plaintiffs are challenging their rates as set by the budget neutrality policy's percentage adjustment to the standardized rate. So, for example, in a 2009 amendment of section 405.378, CMS reaffirmed that "Medicare's longstanding policy is that a final determination occurs when the determination sets forth a specific amount that is due." 74 Fed. Reg. 47,458, 47,462 (Sept. 16, 2009). This language is consistent with the Secretary's interpretation that a final determination of an underpayment requires a determination of the actual amount of the underpayment. At least two courts have found, in different contexts, that the Secretary's "narrower interpretation" of section 1395g(d), was not unreasonable. *Cosgrove*, 999 F.2d at 633; *Nat'l Med. Enterprises, Inc. v. Sullivan*, 960 F.2d 866, 869 (9th Cir. 1992).

While section 1395g(d) provides an express waiver of sovereign immunity that authorizes an award of interest in limited circumstances, plaintiffs' invocation of the provision here does not construe that waiver narrowly. There is simply no express indication that Congress intended interest to run against the government in the absence of a determination reducing the amount the government owes to a sum certain and there is actually a balance upon which interest can accrue. *See Libr. of Cong. v. Shaw*, 478 U.S. 310, 320 (1986) ("The Court consistently has refused to impute an intent to waive immunity from interest into the ambiguous use of a particular word or phrase in a statute.").

## CONCLUSION

For the foregoing reasons, the Court should remand this matter to the Secretary for further proceedings consistent with the Court's Memorandum Opinion.

Dated: May 9, 2022                                Respectfully submitted,

                                                 BRIAN M. BOYNTON
                                                 Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

   */s/ Lisa Zeidner Marcus*
LISA ZEIDNER MARCUS
Senior Counsel (N.Y. Bar # 4461679)
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L St., NW, Twelfth Floor
Washington, DC 20530
Tel: (202) 514-3336
Fax: (202) 616-8470
Email: lisa.marcus@usdoj.gov

*Attorneys for Defendant*

**APPENDIX**

| Hospital (Listed in Order of Appearance in the Complaint, ECF No. 1) | Provider No. | Cost Report received date | NPR issue date (if applicable)* |
|---|---|---|---|
| Bridgeport Hospital | 07-0010 | 03/01/2021 | |
| Greenwich Hospital | 07-0018 | 02/26/2021 | |
| Lawrence + Memorial Hospital | 07-0007 | 03/01/2021 | |
| Yale New Haven Hospital | 07-0022 | 03/04/2021 | |
| Westerly Hospital | 41-0013 | 03/11/2021 | |
| Emory University Hospital | 11-0010 | 01/31/2022 | |
| Dekalb Medical Center | 11-0076 | 01/28/2022 | |
| Emory University Hospital Midtown | 11-0076 | | |
| Saint Joseph's Hospital of Atlanta, Inc. | 11-0082 | 01/28/2022 | |
| Dekalb Medical Center at Hillandale | 11-0226 | 01/27/2022 | |
| Emory Johns Creek Hospital | 11-0230 | 01/31/2022 | |
| Kent County Memorial Hospital | 41-0009 | 03/29/2021, Amended#1: 04/15/2021 Ameded#2: 03/24/2022 | |
| Women & Infants Hospital of Rhode Island | 41-0010 | 04/09/2021, Amended: 03/24/2022 | |
| The University of Chicago Medical Center | 14-0088 | 11/22/2021 | |
| Ingalls Memorial Hospital | 14-0191 | 11/30/2021 | |
| Margaret R. Pardee Memorial Hospital | 34-0017 | 12/01/2021 | |
| Caldwell Memorial Hospital | 34-0041 | 11/23/2021 | |
| UNC Rockingham Health Care | 34-0060 | 11/29/2021 | |
| UNC Hospitals | 34-0061 | 11/26/2021 | |
| Johnston Health Services Corporation | 34-0090 | 11/23/2021 | |
| Rex Hospital | 34-0114 | 11/23/2021 | |
| Nash Hospitals, Inc. | 34-0147 | 11/22/2021 | |
| Milford Regional Medical Center | 22-0090 | 04/23/2021 | |
| Emerson Hospital | 22-0084 | 03/30/2021 | |

* Current as of May 4, 2022.

17