# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BRIDGEPORT HOSPITAL, dba Yale New Haven Health, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-1574 (CJN) |
| XAVIER BECERRA, Secretary of Health and Human Services, | ) ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' REPLY BRIEF ON REMEDIES

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ......................................................................................................2

    A.    Vacatur of the Payment Reduction is the Proper Remedy.......................................2

        1.    Remand Without Vacatur is Only Permitted in Limited Circumstances Not Present Here. ..............................................2

            a.    The Allied-Signal Test is Only Appropriate in Cases Involving Procedural Deficiencies, Where the Agency Action can be Rehabilitated on Remand..........................................3

            b.    Even if Allied-Signal is Applicable, Neither Factor Supports the Extraordinary Remedy of Remand Without Vacatur .......................................................................5

        2.    Vacatur Cannot be Confined to the Plaintiff Hospitals. .............................7

    B.    Prompt Reversal of the Hospitals' Payment Reduction is Appropriate Because There is No Other Rational Course. ........................................12

    C.    As the Undisputed Prevailing Parties, the Hospitals are Entitled to an Award of Interest Under the Medicare Act.........................................14

III. CONCLUSION ...............................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*,
　　539 F. Supp. 3d 29 (D.D.C. 2021) ............................................................................7

\*　*Allied–Signal, Inc. v. Nuclear Regulatory Comm'n*,
　　988 F.2d 146 (D.C. Cir. 1993) ....................................................................... *passim*

\*　*Allina Health Servs. v. Sebelius*,
　　746 F.3d 1102 (D.C. Cir. 2014) ................................................................2, 11, 13

*Am. Great Lakes Ports Ass'n v. Schultz*,
　　962 F.3d 510 (D.C. Cir. 2020) ...............................................................................2, 3

*Am. Hosp. Ass'n v. Azar*,
　　385 F. Supp. 3d 1 (D.D.C. 2019) .............................................................................4, 5

*Berge v. United States*,
　　949 F. Supp. 2d 36 (D.D.C. 2013) ..............................................................................12

*Bridgeport Hosp. v. Becerra*,
　　20-cv-01574 (CJN), 2022 WL 612658 (D.D.C. Mar. 2, 2022) ................................15

*California v. Texas*,
　　141 S. Ct. 2104 (2021).................................................................................................10

*Cape Cod Hosp. v. Sebelius*,
　　630 F.3d 203 (D.C. Cir. 2011) ....................................................................................12

*Cemex Inc. v. Dep't of the Interior*,
　　No. 1:19-CV-01265 (CJN), slip op. (D.D.C. May 25, 2022) (Nichols, J.)................2

*Citrus HMA, LLC v. Becerra*,
　　No. CV 20-707 (CKK), 2022 WL 1062990 (D.D.C. Apr. 8, 2022) .....................4, 5

*Cobell v. Norton*,
　　240 F.3d 1081 (D.C. Cir. 2001) ..................................................................................14

*Comcast Corp. v. F.C.C.*,
　　579 F.3d 1 (D.C. Cir. 2009) .........................................................................................6

*County of Los Angeles v. Shalala*,
　　192 F.3d 1005 (D.C. Cir. 1999) ..................................................................................13

*Ctr. for Biological Diversity v. Ross*,
No. CV 18-112 (JEB), 2020 WL 4816458 (D.D.C. Aug. 19, 2020) ........................................3

*D.A.M. v. Barr*,
486 F. Supp. 3d 404 (D.D.C. 2020), (Sec'y Br., ECF No. 32) ..................................................9

*Gill v. Whitford*,
138 S. Ct. 1916 (2018)..............................................................................................................10

*Heartland Reg'l Med. Ctr. v. Sebelius*,
566 F.3d 193 (D.C. Cir. 2009) ....................................................................................................6

*Kiakombua v. Wolf*,
498 F. Supp. 3d 1, 52 (D.D.C. 2020), *appeal dismissed sub nom. Kiakombua
v. Mayorkas*, No. 20-5372, 2021 WL 3716392 (D.C. Cir. July 19, 2021) ...............................8

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990)....................................................................................................................8

*Meinhold v. U.S. Dep't of Def.*,
34 F.3d 1469 (9th Cir. 1994) ......................................................................................................9

*Milton S. Hershey Med. Ctr. v. Becerra*,
No. 19-CV-3411, 2021 WL 1966572 (D.D.C. May 17, 2021), *appeal
dismissed*, No. 21-5169, 2021 WL 4057675 (D.C. Cir. Aug. 23, 2021) ................................13

*N. Air Cargo v. U.S. Postal Serv.*,
674 F.3d 852 (D.C. Cir. 2012) ....................................................................................................3

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
145 F.3d 1399 (D.C. Cir. 1998) ...........................................................................................7, 8

*Nebraska Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*,
435 F.3d 326 (D.C. Cir. 2006) ....................................................................................................9

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019) .....................................................................................8, 11

*Russell-Murray Hospice, Inc. v. Sebelius*,
724 F. Supp. 2d 43 (D.D.C. 2010) ...........................................................................................11

*Select Specialty Hosp.-Denver, Inc. v. Azar*,
10-cv-1356 (BAH), 2019 WL 5697076 (D.D.C. Nov. 4, 2019)...............................................16

*Shands Jacksonville Med. Ctr., Inc. v. Azar*,
14-cv-263 (RDM), 2019 WL 1228061 (D.D.C. Mar. 15, 2019), *aff'd*, 959 F.3d
1113 (D.C. Cir. 2020) ..........................................................................................................16, 17

*Shands Jacksonville Med. Ctr., Inc. v. Azar*,
    959 F.3d 1113 (D.C. Cir. 2020) ........................................................................3, 6, 17

*Shands Jacksonville Med. Ctr. v. Burwell*,
    139 F. Supp. 3d 240 (D.D.C. 2015) ..............................................................................6

*Tucson Med. Ctr. v. Sullivan*,
    947 F.2d 971 (D.C. Cir. 1991) ...........................................................................15, 16

**Statutes**

\* 5 U.S.C. § 706(2)(C) ...............................................................................................2, 10

42 U.S.C. § 1395g(a) ......................................................................................................17

42 U.S.C. § 1395g(d) ...........................................................................................14, 16, 17

42 U.S.C. § 1395oo ..........................................................................................................10

42 U.S.C. § 1395oo(a)(1)(ii) ............................................................................................15

42 U.S.C. § 1395oo(f) ................................................................................................10, 11

42 U.S.C. § 1395oo(f)(1) ............................................................................................14, 15

\* 42 U.S.C. § 1395oo(f)(2) ....................................................................................14, 15, 16, 17

42 U.S.C. § 1395oo(f)(2), and (3) ..................................................................................17

**Regulations**

42 C.F.R. § 418.309(b)(1) ...............................................................................................11

# I. __INTRODUCTION__

Following this Court's conclusion that the Secretary unlawfully reduced the Hospitals' Medicare payments by 0.2016% in Federal fiscal year ("FFY") 2020, the Administrative Procedure Act ("APA") directs that this Court "*set aside*" (*i.e.*, vacate) the unlawful payment reduction, and the Medicare Act further requires an award of interest to the Hospitals as the indisputable prevailing parties.  The Secretary's payment reduction is in excess of his statutory authority and cannot be rehabilitated on remand, such that any remedy short of vacatur would likely delay the relief to which the Hospitals are entitled.  As this Court has noted, "Experience suggests that remand without vacatur sometimes invites agency indifference." *Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 282 (D.D.C. 2021) (quotation omitted).

The Secretary nevertheless argues against the normal relief, seeking remand without vacatur based on case law that is facially inapplicable because they involve curable agency errors.  Moreover, he suggests that vacatur, if granted, should be confined only to the Hospitals—an argument that is "both at odds with settled precedent and difficult to comprehend." *O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019).  Likewise, in light of the Secretary's concession that the Hospitals are the prevailing parties (Sec'y Br. at 13), his arguments opposing an award of interest run contrary to statute and the law of this Circuit.

In addition to vacatur and litigation interest, the Hospitals seek make-whole relief to ensure that the effect of the 0.2016% payment reduction on the Hospitals is reversed and they are promptly paid the amounts they are due.  The substantive unlawfulness of the payment reduction leaves the Secretary with only "one rational course" to follow on remand—payment of the amounts he underpaid the Hospitals due to his unlawful payment reduction.

## II. ARGUMENT

**A.     Vacatur of the Payment Reduction is the Proper Remedy.**

Vacatur of the Secretary's unlawful 0.2016% payment reduction to Medicare hospital
inpatient payments in FFY 2020 is the normal and appropriate remedy under the Administrative
Procedure Act ("APA") and, because the Secretary's payment reduction cannot be rehabilitated
on remand, this case does not present circumstances permitting remand without vacatur.  Section
706 of the APA expressly provides that a "reviewing court *shall* . . . hold unlawful and *set aside*
agency action" found to be "in excess of statutory jurisdiction, authority, or limitations, or short
of statutory right."  5 U.S.C. § 706(2)(C) (emphasis added).  Thus, the D.C. Circuit and this
Court have regularly observed that "vacatur is the normal remedy" for violations of the APA.
*Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014); *see also Cemex Inc. v.
Dep't of the Interior*, No. 1:19-CV-01265 (CJN), slip op. at 3 (D.D.C. May 25, 2022) (Nichols,
J.) (noting that "vacatur rather than remand is the normal remedy under the APA"); Pls' Br.
Remedies at 3-4, ECF No. 30 (citing additional cases).  In arguing for remand without vacatur,
the Secretary fails to acknowledge the requirements of section 706(2)(C) of the APA or the
weight of authority establishing vacatur as the "normal" remedy.  Sec'y Br. Remedies at 4-7,
ECF No. 32 (omitting any discussion of section 706 or the normal remedy under the APA).

1.     Remand Without Vacatur is Only Permitted in Limited Circumstances Not
Present Here.

In APA challenges where reviewing courts have found *procedural* deficiencies, the D.C.
Circuit has acknowledged certain "limited circumstances" in which remand without vacatur may
be appropriate.  *E.g.*, *Allied–Signal, Inc. v. Nuclear Regulatory Comm'n,* 988 F.2d 146, 150–151
(D.C. Cir. 1993); *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510 (D.C. Cir. 2020).  But
the case at bar involves Secretary action in excess of statutory authority that cannot be

rehabilitated on remand.  Even if the *Allied-Signal* test were applicable here (which it is not), the Secretary has not met his burden given the seriousness of his payment reduction's deficiencies and his failure to identify disruptive consequences that would flow from setting aside the unlawful payment reduction.  *See Ctr. for Biological Diversity v. Ross*, No. CV 18-112 (JEB), 2020 WL 4816458, at *5 (D.D.C. Aug. 19, 2020) ("Because vacatur is the default remedy, . . . defendants bear the burden to prove that vacatur is unnecessary.") (citing *Nat'l Parks Conservation Ass'n v. Semonite*, 422 F. Supp. 3d 92, 99 (D.D.C. 2019)).

      a.      *The <u>Allied-Signal</u> Test is Only Appropriate in Cases Involving Procedural Deficiencies, Where the Agency Action can be Rehabilitated on Remand.*

First, as the Secretary acknowledges, the current question in this case is the appropriate remedy for a *substantively* unlawful agency action rather than a *procedural* APA deficiency. Sec'y Br. Remedies at 6, ECF No. 32.  D.C. Circuit jurisprudence permitting remand without vacatur in certain limited circumstances, however, is confined to challenges involving procedural APA deficiencies that could be rehabilitated with further explanation or other action on remand. *E.g.*, *Allied–Signal, Inc.,* 988 F.2d at 151 (D.C. Cir. 1993) (permitting remand without vacatur based on a two-factor test where the justification for the challenged rule was "inadequately supported," thus creating the possibility that the agency could, on remand, "develop a reasoned explanation based on an alternative justification"); *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510 (D.C. Cir. 2020) (applying the *Allied-Signal* test to determine the appropriate remedy for an agency's "failure to consider" certain factors); *Shands Jacksonville Med. Ctr., Inc. v. Azar*, 959 F.3d 1113, 1118 (D.C. Cir. 2020) (addressing a challenge to "an inadequately supported rule . . . [where] an agency may be able to rehabilitate its rule on remand . . . ." under *Allied-Signal*); *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 860 (D.C. Cir. 2012) (addressing a challenge to "an inadequately explained agency action" under *Allied-Signal*).  No such rehabilitation is

possible here (and the Secretary does not so argue) because this Court has concluded that the Secretary's rule exceeded his statutory authority. Thus, this case does not present the limited circumstances permitting remand without vacatur and the Secretary's payment reduction must be set aside.

The Secretary's brief does not identify any cases in which the D.C. Circuit has applied the *Allied-Signal* test where an agency was found to have exceeded its statutory authority or otherwise ordered remand without vacatur in such a case. Rather, he points to the recent district court decision in *Citrus HMA, LLC v. Becerra*, No. CV 20-707 (CKK), 2022 WL 1062990, at *9-10 (D.D.C. Apr. 8, 2022). In *Citrus HMA*, once the court concluded that the Secretary unlawfully adopted an alternative rural floor that deviates from the rural wage index calculation, the court proceeded to apply the *Allied-Signal* test without addressing or deciding the threshold question of whether the *Allied-Signal* test is applicable in a case where the agency action was contrary to law and cannot be corrected on remand. In other words, *Citrus HMA assumes* the applicability of the *Allied-Signal* test in a case where the parties did not call into question the test's applicability. Moreover, the D.C. Circuit cases cited in the remedies portion of the *Citrus HMA* decision exclusively involve procedural challenges to agency rules. *Id.* (citing *N. Air Cargo*, 674 F.3d at 861 (D.C. Cir. 2012) (involving an "inadequately explained agency action"); *Allied-Signal, Inc.*, 988 F.2d at 150-51 (concerning a rule that was "inadequately supported," thus creating the possibility that the agency could, on remand, "develop a reasoned explanation based on an alternative justification"); *Allina Health Servs. v. Sebelius*, 746 F.3d at 1111 (addressing "an inadequately explained agency action" )).[1]

---

[1] The *Citrus HMA* Court also cites to the district court decision in *American Hospital Association v. Azar*, which applies the *Allied-Signal* test to assess whether vacatur is warranted

Because the Secretary's rule exceeds his authority under the Medicare Act such that the challenged payment reduction cannot be rehabilitated with further explanation on remand, this case does not present the limited and extraordinary circumstances that would warrant remand without vacatur.

> b.      Even if _Allied-Signal_ is Applicable, Neither Factor Supports the Extraordinary Remedy of Remand Without Vacatur

Even if _Allied-Signal_ were to apply in this case, both of its factors weigh strongly in favor of vacatur.  The first _Allied-Signal_ factor—the seriousness of the agency's action's deficiencies—is manifest in this case.  The Secretary's payment reduction violated the Medicare Act, which is a fundamental failure that cannot be remedied with any amount of reasoning on remand.  The Secretary seemingly concedes this point, declining to dispute the seriousness of the payment reduction's deficiencies and instead contending that courts have ordered remand without vacatur based on the second _Allied-Signal_ factor alone.  Sec'y at 4-5, ECF No. 32.

The second _Allied-Signal_ factor, which looks at "the disruptive consequences of an interim change that may itself be changed," 988 F.2d at 150-51, likewise does not support remand without vacatur in this case.  The Secretary, lumping together the relief sought by the Hospitals (vacatur of the payment reduction) with relief Hospitals have not requested (vacatur of the low wage index hospital policy), argues that vacatur would create a regulatory vacuum.[2]

---

after the parties agreed as to the test's applicability.  _Am. Hosp. Ass'n v. Azar_, 385 F. Supp. 3d 1, 15 (D.D.C. 2019), judgment entered, No. CV 18-2084 (RC), 2019 WL 3037306 (D.D.C. July 10, 2019), _rev'd on other grounds_, 967 F.3d 818 (D.C. Cir. 2020), _cert. granted_, 141 S. Ct. 2883 (2021).  Thus, neither _American Hospital Association_ nor _Citrus HMA_ provide any analysis as to the applicability of _Allied-Signal_ in a case involving an agency action that exceeds statutory authority.

[2] _Amici_ Hospital Associations likewise do not identify any disruptive consequences that would flow from vacatur of the 0.2016% payment reduction, instead focusing on the specter of vacatur of the inflationary low wage index hospital policy.  _Amicus Curiae_ Br. at 5-8, ECF No.

Sec'y Br. at 5-6, ECF No. 32.  To be clear, the Hospitals are not seeking vacatur of the low wage

index hospital policy, which did not inflate or alter their wage index values.  Compl., Req. for

Relief ¶1, ECF No. 1 (requesting an "order declaring invalid and vacating the 0.2016% payment

reduction for FFY 2020 and setting aside the portion of the FFY 2020 IPPS Final Rule that

imposed the 0.2016% payment reduction).  Vacatur of the 0.2016% payment reduction poses

little risk of disruption as it eliminates a payment reduction applied in excess of legal authority.

　　　　Moreover, the relief requested—vacatur of the payment reduction—would not constitute

"an interim change that may itself be changed" because the Secretary lacks the legal authority to

impose the payment reduction, full stop.  *See Comcast Corp. v. F.C.C.*, 579 F.3d 1, 9 (D.C. Cir.

2009) ("Of course, the second *Allied–Signal* factor is weighty only insofar as the agency may be

able to rehabilitate its rationale for the regulation.").  This case is unlike *Shands* where a payment

reduction was held unlawful due to a procedural error and the Secretary "maintain[ed] that the

0.2 percent reduction is justified."  *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d

240, 270 (D.D.C. 2015).  In that case, vacatur would have required making payments while the

Secretary maintained the theoretical ability to rehabilitate and repromulgate the rule, thereby

producing disruptive consequences.  *Id.*; *see also Heartland Reg'l Med. Ctr. v. Sebelius*, 566

F.3d 193, 198 (D.C. Cir. 2009) (concluding that the second *Allied-Signal* factor counseled

remand without vacatur when the Secretary could "repromulgate[] the same rule and g[i]ve an

adequate reason for rejecting the alternatives").  The Secretary here, however, does not point to

any action he could undertake on remand that would rehabilitate the payment reduction, and the

absence of statutory authority for the payment reduction precludes such a result.

---

35.  Because the Hospitals do not request such relief, *Amici*'s arguments are not addressed
further.

Finally, the Secretary concludes—without elaboration—that vacatur would "complicate the Secretary's ability to effectuate the Court's legal holding." Sec'y Br. at 6, ECF No. 32. It is unclear how or why vacatur of the unlawful payment reduction could complicate effectuation of the Court's legal holding. The Secretary has established mechanisms for instructing his contractors to make the additional Medicare payments hospitals are owed for inpatient care furnished in FFY 2020, and vacatur would hasten rather than derail these routine, ministerial processes. The Secretary does not identify any way in which he could effectuate the Court's ruling while maintaining the payment reduction (*i.e.*, providing additional explanation would not cure the statutory defect at issue). Without statutory authority for the payment reduction, the payment reduction cannot remain on the books and operate to unlawfully reduce FFY 2020 payments. Therefore, the normal remedy of vacatur is proper in this case.

      2.    <u>Vacatur Cannot be Confined to the Plaintiff Hospitals.</u>

Vacatur of the payment reduction is not relief that is confined to individual plaintiffs; rather, it wholly sets aside the unlawful agency action. The D.C. Circuit has "made clear that '[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.'" *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n. 21 (D.C. Cir. 1989)); *see also Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*, 539 F. Supp. 3d 29, 43 (D.D.C. 2021) ("This Circuit has instructed that when 'regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioner is proscribed.'") (quoting *Nat'l Mining Ass'n*, 145 F.3d at 1409 (D.C. Cir. 1998)).

Despite the clear weight of authority in this Circuit, the Secretary argues that "[s]hould the Court determine that vacatur is necessary, it should limit its vacatur order . . . by vacating the

reduction the plaintiff hospitals' FFY 2020 standardized amount, and remanding for further proceedings consistent with the Court's Memorandum Opinion."  Sec'y Br. at 8, ECF No. 32. The same argument was recently analyzed and rejected in *O.A. v. Trump*, with the court describing the contention that the vacatur remedy should be limited to the plaintiffs in that case as "both at odds with settled precedent and difficult to comprehend."  404 F. Supp. 3d 109, 153 (D.D.C. 2019).  Subsequently, the court in *Kiakombua v. Wolf* similarly concluded that "where the legal claim at issue is the unlawfulness of an agency action of general applicability, it makes no sense whatsoever to insist that a district court limit its vacatur to address solely the impact of the unlawful agency action on the plaintiffs."  498 F. Supp. 3d 1, 52 (D.D.C. 2020), *appeal dismissed sub nom. Kiakombua v. Mayorkas*, No. 20-5372, 2021 WL 3716392 (D.C. Cir. July 19, 2021).  Limiting vacatur in this way would be "tantamount to transforming a facial challenge to agency conduct into an as applied claim.  It defies both law and logic."  *Id.*[3]  This case does not involve an as-applied challenge to the Secretary's payment reduction; rather, the Hospitals argued and this Court concluded that the payment reduction facially exceeds the Secretary's

---

[3] In *National Mining Association*, the D.C. Circuit adopted Justice Blackmun's analysis of this issue in *Lujan v. National Wildlife Federation*, 497 U.S. 871, 931 (1990), stating that this portion of his dissent "apparently express[ed] the view of all nine Justices on this question."  145 F.3d at 1409.  In relevant part, Justice Blackmun wrote as follows:

> The Administrative Procedure Act permits suit to be brought by any person "adversely affected or aggrieved by agency action." In some cases the "agency action" will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual. Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain 'programmatic' relief that affects the rights of parties not before the court. On the other hand, if a generally lawful policy is applied in an illegal manner on a particular occasion, one who is injured is not thereby entitled to challenge other applications of the rule.

145 F.3d at 1409 (*quoting Lujan v. National Wildlife Federation*, 497 U.S. 871, 913 (Blackmun, J., dissenting) (1990)).

statutory authority.  As such, relief in the form of vacatur of the rule cannot properly be confined to the Hospitals.

By way of comparison, in a Ninth Circuit case cited by the Secretary (Sec'y Br. at 9 (citing *Meinhold v. U.S. Dep't of Def.,* 34 F.3d 1469, 1480 (9th Cir. 1994)), the court rejected a facial challenge, concluding that the regulation "need not be construed so broadly as to raise constitutional concerns," but concluded that the discharge of a particular individual based on the particular facts of his case was arbitrary.  34 F.3d at 1479-80.  Against this backdrop, the appropriate remedy for this as-applied challenge was a limited injunction rather than a national injunction.  *Id.* at 1480.  This out-of-circuit authority on the appropriate relief in an as-applied challenge is inapplicable to determining the appropriate relief for the Secretary's unlawful payment reduction contained in his FFY 2020 final rule.  *See also Nebraska Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (involving remedies in an as-applied challenge where "only the decision, not the rule on which it depends, was challenged"), *cited in* Sec'y Br. at 9, ECF No. 32.

In arguing that vacatur should be limited to the Hospitals in this case, the Secretary fails to identify any authority supporting limiting an order of vacatur to particular plaintiffs.  In fact, in *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 415 (D.D.C. 2020), (Sec'y Br. at 9, ECF No. 32), the court acknowledged that vacatur is not so limited, referencing "the long-held understanding that once a rule is vacated, it is vacated for everyone."  The court's conclusion that "vacatur of an agency rule" prevents the issuance of future orders under the vacated rule but does not operate to "automatically extinguish" past orders, *id.*, does not suggest that vacatur of the payment reduction could properly be limited to particular plaintiffs.

The Secretary also cites to two cases on standing that do not reach the merits or address vacatur at all.  Sec'y Br. 8-9 (citing *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) and *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018)), ECF No. 32.  In *California v. Texas*, the Supreme Court concluded that the "redressability" requirement for standing was not met where any injunction of the challenged but unenforceable legal provision "could amount to no more than a declaration that the statutory provision they attack is unconstitutional."  141 S. Ct. at 2116. And in *Gill v. Whitford*, the Court likewise cautioned that "standing is not dispensed in gross: A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."  138 S. Ct. at 1934 (quotation omitted).  This Court has already concluded that the Hospitals have standing to "challenge a decision that affects the payments they receive," Mem. Opp. at 11, ECF No. 28, and neither *California v. Texas* nor *Gill* narrow the relief available to them.

The Secretary also argues that Medicare cases are distinct from other APA cases because section 1395oo(f) "makes clear that the issues for review arise in the context of a challenge akin to an individual adjudication," and that therefore, any vacatur that is not confined to the Hospitals is "at odds with 42 U.S.C. § 1395oo."  Sec'y Br. at 8-9, ECF No. 32.  The statute, however, does not alter or diminish the APA's mandate that "a reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusion found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).  In fact, section 1395oo(f) expressly provides for judicial review conducted "pursuant to the applicable provisions" of the APA.  The Hospitals are unaware of—and the Secretary fails to identify any—cases in which section 1395oo was construed to limit a Medicare provider to an as-applied legal challenge or limit relief under the APA.  In fact, the D.C. Circuit has previously affirmed vacatur (without limitation) of the Secretary's rules following a grant of expedited

judicial review of 27 hospitals' appeals under § 1395oo(f).  *Allina Health Servs. v. Sebelius*, 746

F.3d 1102, 1111 (D.C. Cir. 2014), *aff'g in part, rev'g in part*, 904 F. Supp. 2d 75, 83 (D.D.C.

2012).

Of the cases cited in connection with the Secretary's argument under section 1395oo(f),

only *Russell-Murray Hospice, Inc. v. Sebelius*, 724 F. Supp. 2d 43, 50 (D.D.C. 2010), involves a

provider appeal under section 1395oo(f).  Sec'y Br. at 9, ECF No. 32.  But the court in that case

declared the challenged regulation (42 C.F.R. § 418.309(b)(1)) to be unlawful and "set [it] aside"

(*i.e.*, vacated the rule).  724 F. Supp. 2d at 60.  After setting aside the unlawful regulation, the

Court separately granted *injunctive* relief to plaintiff but declined to enter "a nationwide

injunction."  *Id.*  In the case at bar, the Hospitals are seeking vacatur of the payment reduction,

their own litigation interest, and individualized injunctive relief (see Part II.B, *infra*), not a

nationwide injunction.  Moreover, nowhere does *Russell-Murray Hospice* suggest that a

reviewing court under section 1395oo(f) cannot grant the normal remedy of vacatur or is

otherwise limited in granting relief pursuant to the APA.

Finally, the Secretary provides no explanation as to how the "limited" vacatur requested

could be effectuated.  Justice Ketanji Brown Jackson (then Judge Jackson) concluded that such

limited vacatur is not permissible or practicable: "[t]he Court does not know how a court vacates

a rule only as to one state, one district, or one party."  498 F. Supp.3d at 53 n.18 (quotation and

citation omitted).  Judge Moss has likewise observed that "the Court would be at a loss to

understand what it would mean to vacate a regulation, but only as applied to the parties before

the Court." *O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019).  "Fortunately, the Court

need not engage in such logical gymnastics because the language of the APA and the controlling

D.C. Circuit precedent are unambiguous." *Id.*  The proper remedy is simply vacatur, and "the

legal consequences of that result are not limited to 'the individual' plaintiffs." *Id.* (quoting *Nat'l Mining Ass'n*, 145 F.3d at 1409).

**B.**     **Prompt Reversal of the Hospitals' Payment Reduction is Appropriate Because There is No Other Rational Course.**

Having concluded that the payment reduction must be set aside, the only rational course for the Secretary is prompt payment to the Hospitals of the additional FFY 2020 inpatient hospital payments due. In *Berge v. United States*, the court recognizes an exception to the general rule that a district court's role in reviewing a final agency action is limited to errors of law unless "[t]here is not the slightest uncertainty as to the outcome of a[n] [agency] proceeding." 949 F. Supp. 2d 36, 42 (D.D.C. 2013) (alteration in original) (quoting *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1489 (D.C. Cir. 1995)). The court states, in these cases, "'remand to the agency is an unnecessary formality' . . . because there is 'only one rational course' for the [a]gency to follow upon remand." *Id.* at 42-43 (quoting *Fed. Election Comm'n v. Legi-Tech, Inc.*, 75 F.3d 704, 709 (D.C. Cir. 1996); *Am. Fed'n of Gov't Emps.*, *AFL-CIO v. Fed. Labor Relations Auth.*, 778 F.2d 850, 862 n.19 (D.C. Cir. 1985)); *see also Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 216 (D.C. Cir. 2011) (holding that if the Secretary was unable to explain her rationale for certain payment reduction on remand, she must "recalculate the payments due to the hospitals under a formula that removes the effects of the prior . . . adjustments"). Here, the only rational course is for the Secretary to promptly pay the Hospitals the payments owed following vacatur of the payment reduction. In fact, the Secretary's brief does not identify any other appropriate rational course that would be available to him on remand. Sec'y Br. at 10-12, ECF No. 32.

For this reason, the Secretary's reliance on several cases cited to in his brief is misplaced, as each involved situations where more than one rational course was available on remand. *See,*

*e.g.*, *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1023 (D.C. Cir. 1999) (reversing the district court's order to the Secretary to recalculate and pay certain retroactive payments to the hospitals because the Secretary could either recalculate the retroactive payments or offer a reasonable explanation for her original decision); *see also Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110-11 (D.C. Cir. 2014) (upholding vacatur but reversing the district court's order to the Secretary to recalculate hospital reimbursements because the Secretary contended that she might be able to achieve the same results through adjudication). These cases are inapplicable to the facts here, as the Secretary presents no other rational course other than reversal of the payment reduction. Thus, ordering prompt payment of the additional FFY 2020 IPPS payments to the Hospitals is appropriate as the only rational course.

Furthermore, the Secretary offers no specific reason why he would be unable to instruct his Medicare Administrative Contractors ("MACs") to make the additional payments due to the Hospitals, plus required interest, within 60 days. As the Secretary states, his agency is already in possession and undertaking review of the cost reports necessary to make a final determination regarding total reimbursement due for FFY 2020. Prompt repayment of the payment reduction ought to be a straightforward process—the Secretary would instruct his MACs to calculate the difference between inpatient payments made for FFY 2020 claims and the payments amounts to which the Hospitals are entitled as a result of vacating the payment reduction, and to remit payment accordingly. *Milton S. Hershey Med. Ctr. v. Becerra*, No. 19-CV-3411, 2021 WL 1966572, at *1 (D.D.C. May 17, 2021) (remanding "to the agency so that it may recalculate Plaintiffs' reimbursement payments consistent with this Opinion."), *appeal dismissed*, No. 21-5169, 2021 WL 4057675 (D.C. Cir. Aug. 23, 2021). Even if the Secretary were unable to

guarantee payment to the Hospitals within 60 days, the Secretary has not argued any reason as to why he could not at least provide his MACs with the appropriate instructions within 60 days.

Lastly, this court should retain jurisdiction to ensure that the Secretary is diligently rectifying the repayment obligations owed to the Hospitals. *See Cobell v. Norton*, 240 F.3d 1081, 1109 (D.C. Cir. 2001) (stating that "federal courts regularly retain jurisdiction until a federal agency has complied with its legal obligations, and have the authority to compel regular progress reports in the meantime" in order to ensure the agency properly discharges its obligations). Even if the Court does not require full payment to the Hospitals within 60 days, the Court should retain jurisdiction for purposes of ensuring the Secretary diligently take steps towards such obligation, such as requiring the Secretary to provide instructions to the MACs within 60 days.

**C.** **As the Undisputed Prevailing Parties, the Hospitals are Entitled to an Award of Interest Under the Medicare Act.**

Consistent with the Complaint's Request for Relief (ECF No. 1), Plaintiffs ask this Court to (1) expressly vacate the challenged 0.2016% payment reduction that was set aside in this Court's Memorandum Opinion and (2) order the Secretary to make the additional FFY 2020 IPPS payments due to the Hospitals as a result of reversing the effect of the payment reduction, plus interest calculated under 42 U.S.C. § 1395oo(f)(2) and/or 42 U.S.C. § 1395g(d).

The Medicare Act provides that "[w]here a provider seeks judicial review pursuant to [42 U.S.C. § 1395oo(f)(1)], the amount in controversy *shall be subject to annual interest* beginning on the first day of the first month beginning after the 180-day period [after the issuance of a final determination] . . . *to be awarded by the reviewing court in favor of the prevailing party*." 42 U.S.C. § 1395oo(f)(2) (emphases added). Thus, by the express terms of the statute, which are directed at the judiciary, there are three prerequisites for awarding litigation interest: (1) the provider must seek judicial review of a determination of the Secretary pursuant to 42 U.S.C.

§ 1395oo(f)(1); (2) there must be an amount in controversy; and (3) the provider must be the "prevailing party" in the dispute.

As to the first prerequisite, it is undisputed that the Hospitals clearly exhausted their administrative remedies under 42 U.S.C. § 1395oo(f)(1) and that following the PRRB's grant of expedited judicial review, the Hospitals timely filed suit in federal district court.[4] *Bridgeport Hosp. v. Becerra*, 20-cv-01574 (CJN), 2022 WL 612658, at *4-5 (D.D.C. Mar. 2, 2022).  With respect to the third prerequisite, the Secretary concedes (Sec'y Br. on Remedies at 13) that "plaintiffs are a 'prevailing party' for purposes of section 1395oo(f)(2), and as such 'the amount in controversy shall be subject to annual interest.' 42 U.S.C. § 1395oo(f)(2)."

The Secretary argues, however, that "it would be premature for the Court to issue an award of interest at this time" because "[t]he Court should allow the Secretary to determine the amount in controversy in the first instance." *Id*. (citing *Maine Med. Ctr. v. Burwell*, 841 F.3d 10, 16 (1st Cir. 2016)).  The Secretary disregards this Circuit's precedent with respect to the "amount in controversy" prerequisite. An award of interest does not require this Court's quantification or calculation of interest, nor does it require the Secretary's final calculation of the actual amount owed on the Hospitals' claims.  Rather, the D.C. Circuit has found that "[i]t is well-settled that the 'amount in controversy' must be determined as of the date the suit was filed." *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 980 (D.C. Cir. 1991). As the D.C. Circuit recognized in *Tucson*, "simply by granting the petitions for expedited review, the PRRB

_____

[4] The Secretary's brief on remedies also offers additional "background" that simply reflects the procedural posture of this case.  Sec'y Br. at 1-4, ECF No. 32.  Briefly, the Hospitals initiated this challenge following the Secretary's final rule adopting the challenged payment reduction—a "final determination" that is immediately appealable under 42 U.S.C. § 1395oo(a)(1)(ii).  The Hospitals had no obligations to await conclusion of the Federal fiscal year and settlement of all their impacted cost reports to file suit.  These facts are uncontroverted, and the Secretary identifies no defect in the Hospitals' appeals.

necessarily found that there existed an amount in controversy in excess of $10,000."  In addition, the D.C. Circuit noted, "We have already concluded that when appellants filed suit on January 25, 1989, there existed an amount in controversy such that their claims were not moot."  *Id.*  In subsequent cases in this Circuit, the district court has awarded interest prior to quantification of the precise amounts owed to each hospital. *See Shands Jacksonville Med. Ctr., Inc. v. Azar*, 14-cv-263 (RDM), 2019 WL 1228061, at *10 (D.D.C. Mar. 15, 2019), *aff'd*, 959 F.3d 1113 (D.C. Cir. 2020) (granting plaintiff-hospitals' motions for an order awarding interest under section 1395oo(f)(2) where Secretary conceded plaintiff-hospitals were entitled to an award of interest more than two-and-a-half years prior, but Secretary had not yet paid any portion of the interest sought by the plaintiff-hospitals); *Select Specialty Hosp.-Denver, Inc. v. Azar*, 10-cv-1356 (BAH), 2019 WL 5697076, at *7 (D.D.C. Nov. 4, 2019) (granting plaintiffs' motion to amend judgment to include prejudgment interest under section 1395oo(f)(2) and finding that  "[w]hile the Secretary must still determine on remand the amounts to which plaintiffs are entitled, plaintiffs are entitled to prejudgment interest on those amounts as a matter of right, so their motion is granted.").

Moreover, the Secretary's contention that the *reviewing court's* award of interest to a prevailing party must be delayed until the Secretary and his contractors have fully quantified the underpayments is inconsistent with the requirements of section 1395oo(f)(2).  Interest under section 1395oo(f)(2) is awarded by the "reviewing court," and the Secretary's argument for delay in the award of interest begs the question how this statutory directive requiring a <u>court</u> to award interest under section 1395oo(f)(2) would be effectuated at some future date.

The Secretary also challenges the applicability of the additional interest provision at 42 U.S.C. § 1395g(d).  At this juncture, the Secretary has conceded that the Hospitals are the

prevailing parties, and as the statute directs, this Court as the reviewing court shall award litigation interest to the Hospitals as the prevailing parties under section 1395oo(f)(2).  In light of this concession and the availability of litigation interest, this Court need not address the Secretary's separate obligation to pay interest to the extent required under 42 U.S.C. § 1395g(d).[5] *See Shands Jacksonville Med. Ctr.*, 2019 WL 1228061, at *15 ("Although the Court is authorized to award interest under § 1395oo(f)(2) in the first instance, it is the Secretary, and not the Court, that is charged with making payments to providers for underpayments under § 1395g(a), along with interest under § 1395g(d).").  Out of an abundance of caution, following the *Shands* Court's conclusion that a claim for interest must first be presented to the Secretary, *id.* at *17, the Hospitals presented their claim for interest under section 1395g(d) to the Secretary during the administrative appeals process and have preserved that claim in litigation should the Secretary fail to comply with his obligations under section 1395g(a) and (d).

## III. <u>CONCLUSION</u>

For the foregoing reasons and those set forth in the Plaintiffs' Brief on Remedies (ECF No. 30), this Court should explicitly (1) vacate the payment reduction, (2) award interest to the Hospitals under 42 U.S.C. § 1395oo(f)(2), and (3) order the Secretary to (a) recalculate the Hospitals' FFY 2020 IPPS payments after removing the effect of the payment reduction, and (b) within 60 days, make the additional payments due to the Hospitals plus interest.

Dated:  June 6, 2022

---

[5] The Hospitals do, however, note their disagreement with the Secretary's narrow framing of section 1395g(d).  For example, despite the Secretary's invocation of legislative history (Sec'y Br. at 14, ECF No. 32), the express statutory language of 42 U.S.C. § 1395g(d) applies with equal force to underpayments as overpayments—an "excess or deficit."  No legislative history can rewrite the plain text of the statute.

Respectfully submitted,

_____ /s/ Katrina Pagonis_____
Katrina Pagonis (Cal. Bar No. 262890)
HOOPER LUNDY & BOOKMAN, P.C.
101 Montgomery Street, 11th Floor
San Francisco, CA 94104
Tel:  (415) 875-2500
Fax:  (415) 986-2157
E-mail: kpagonis@health-law.com

Robert L. Roth (D.C. Bar No. 441803)
Kelly A. Carroll (D.C. Bar No. 1018485)
HOOPER LUNDY & BOOKMAN, P.C.
401 9th Street, NW, Suite 550
Washington, DC  20004
Tel.: (202) 580-7701
Fax: (202) 580-7719
E-mail: rroth@health-law.com
E-mail: kcarroll@health-law.com

*Counsel for Plaintiffs*