UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIDGEPORT HOSPITAL, *et al.*,

    *Plaintiffs*,

v.

XAVIER BECERRA, *in his official capacity as Secretary of Health and Human Services*,

    *Defendant*.

Civil Action No. 1:20-cv-01574 (CJN)

**ORDER**

In 2019, the Department of Health and Human Services promulgated a regulation to address wage disparities among hospitals. A group of hospitals filed this lawsuit challenging the regulation on several grounds. *See generally Compl.*, ECF No. 1. The Court has since granted the hospitals' motion for summary judgment, concluding that the agency exceeded the scope of its statutory authority when it promulgated the regulation. *See* Memorandum Opinion ("Mem. Op."), ECF No. 28; *see also* Pls.'s Mot. for Summ. J. ("Pls.'s Mot."), ECF No. 14. The Parties dedicated their summary-judgment briefing almost entirely to merits issues, which led the Court to order the Parties to provide supplemental briefing on the appropriate remedy. *See* Order, ECF No. 29. For the reasons that follow, the Court remands this matter for further action consistent with this Order and the Court's March 2, 2022 Memorandum Opinion.

**I.  Factual & Procedural Background**

For the first two decades after its passage in 1965, Medicare reimbursed hospitals providing inpatient services based on the actual costs of the services, assuming they were within certain limits. *See* 42 U.S.C. § 1395f(b)(1) (1988). In 1983, Congress changed the way Medicare

1

reimbursed hospitals for inpatient services. *See Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 205 (D.C. Cir. 2011). Instead of reimbursing hospitals for their actual costs, Congress created the Prospective Payment System, which reimburses hospitals based on predetermined fixed rates. *Id.*; *see* 42 U.S.C. § 1395ww(d)(1)-(5). The System sets a fixed amount that a hospital will receive for a particular service regardless of the actual costs the hospital incurs. *See Toledo Hospital v. Xavier Becerra*, No. 19-CV-3820 (DLF), 2021 WL 4502052 at *1 (D.D.C. Sept. 30, 2021).

In general terms, and as discussed in the Court's March 2, 2022 Memorandum Opinion, HHS relies on a base payment rate (known as the "standardized amount") tied to the national average cost of treating any given ailment. *See Centra Health, Inc. v. Shalala*, 102 F. Supp. 2d 654, 656 (W.D. Va. 2000). The standardized amount consists of both a "non-labor-related" portion and a "labor-related" portion. *Id.* at 656. The labor-related portion consists of the proportion "of hospitals' costs which are attributable to wages and wage-related costs." 42 U.S.C. § 1395ww(d)(3)(E); *see also* 84 Fed. Reg. 42044, 42325 (Aug. 16, 2019).

Congress requires HHS to adjust a component of the labor-related portion of the standardized amount based on "the difference between hospitals' local wages and wage-related costs and the national average." 42 U.S.C. § 1395ww(E)(iii). To accomplish that mandate, HHS must calculate the so-called "wage index" to account for geographic differences in hospital wage levels. *See Toledo Hospital*, 2021 WL 4502052 at *1. HHS uses wage data collected through surveys "to create the wage index for each geographic area," which involves comparing the "average hourly wage for hospitals in a given geographic area with the national average hourly wage." *Robert Wood Johnson Univ. Hosp. v. Thompson*, 297 F.3d 273, 276 (3d Cir. 2002).

Beginning in 1991, Congress directed that the annual update to the wage index must not increase aggregate payments made to hospitals providing care to Medicare beneficiaries. *See* 42

2

U.S.C. § 1395ww(d)(3)(E).  Put differently, adjustments to the wage index must produce a budget-neutral outcome.  *See Baystate Franklin Med. Ctr. v. Azar*, 950 F.3d 84, 87 (D.C. Cir. 2020) ("[C]hanges in the wage index must be budget neutral.").

To address disparities between hospitals in the higher end of the wage index compared to those at lower end, HHS proposed in 2018 "increasing wage index values for certain low wage index hospitals with low wage index values and decreasing the wage index values for certain hospitals with high wage index values to maintain budget neutrality."  84 Fed. Reg. 19158, 19162 (May 3, 2019).  HHS later adopted the proposal to adjust the wage index values of the hospitals in the bottom quartile, basing its authority to adopt the policy on the wage index statute.  *See* U.S.C. § 1395ww(d)(3)(E).  To ensure budget neutrality, HHS adopted the budget neutrality policy, decreasing the standardized amount that all hospitals receive for reimbursements to offset the additional amount hospitals in the bottom quartile receive.

A group of hospitals filed this lawsuit, asserting seven causes of action against HHS's rule.  *See generally* Compl.  Following cross-motions for summary judgment, *see* Pls.'s Mot; Def.'s Mot., ECF No. 16, the Court granted summary judgment to the hospitals, holding that the Medicare statute requires HHS to calculate the wage index based on data collected through surveys and the agency's decision to inflate the wage values of the hospitals in the bottom quartile was inconsistent with the statute.  *See* Mem. Op.  In reaching that conclusion, the Court rejected the government's argument that the hospitals lacked standing to challenge the low wage index hospital policy but that the hospitals could challenge the "separate" budget neutrality policy.  *See id.* at 10.  The Court instead concluded that the two policies were inextricably linked because the agency adopted the across-the-board reduction as "a budget neutrality adjustment to the national standardized amount

for all hospitals so that the increase in the wage index for low wage index hospitals . . . is implemented in a budget neutral manner." *Id.*

As noted above, the Parties dedicated their summary-judgment briefing almost entirely to merits issues. The Court therefore ordered the Parties to provide supplemental briefing on the appropriate remedy in light of the Court's Memorandum Opinion. *See* Order, ECF No. 27; *see also* Mem. Op. In their supplemental briefs, the hospitals make plain that they "are not seeking vacatur of the low wage index hospital policy, which did not inflate or alter their wage index values." Pls.'s Reply Br. on Remedies ("Pls.'s Reply Remedies"), ECF No. 37 at 11. Rather, the hospitals request that the Court set aside just the budget neutrality policy. *Id.* The hospitals also request that the Court (1) order HHS make within 60 days "the additional FFY 2020 IPPS payments due to the hospitals as a result of reversing the effect of the Payment Reduction, plus interest," and (2) "retain post-remand jurisdiction to assure that" HHS "fulfills" its "further responsibilities." *Id.* The government, on the other hand, requests that the Court "remand the matter for further proceedings consistent with the Court's Memorandum Opinion." Def.'s Br. on Remedies ("Def.'s Remedies"), ECF No. 32 at 6.

## II.   The Appropriate Remedy under the APA

Although vacatur rather than remand is the normal remedy under the APA, *Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1151 (D.C. Cir. 2005), a court "may remand without vacating the agency's action in limited circumstances," *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 518 (D.C. Cir. 2020). Courts analyze two factors—known as the *Allied-Signal* factors—to determine whether those limited circumstances exist. *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993). First, courts consider the "seriousness of the [agency action's] deficiencies." *Am. Great Lakes Ports Ass'n*, 962 F.3d at 518 (quotation

4

omitted).  Second, courts consider the "disruptive consequences" of vacating rather than remanding.  *Id.*  In weighing the two factors, a "strong showing of one factor" obviates "the need to find a similar showing of the other."  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 674 (D.C. Cir. 2019).  The party opposing vacatur bears the burden of persuading the Court that it should depart from the default vacatur remedy.  *See Ctr. for Biological Diversity v. Ross*, No. CV 18-112 (JEB), 2020 WL 4816458 (D.D.C. Aug. 19, 2020).

### III. The Court Remands This Matter for Further Proceedings

Recall that two factors dictate whether the Court should depart from the standard vacatur remedy:  The seriousness of the agency action's deficiencies and the disruptive consequences of vacatur.  *See Allied-Signal*, 988 F.2d at 150 (quotation omitted).[1]  The remand-or-vacate factors tilt in favor of remanding the matter, especially given the hospitals' unique request for only partial vacatur.[2]

---

[1] The hospitals contend that the *Allied-Signal* factors do not apply where the reviewing court has found procedural rather than substantive deficiencies with the agency's action (*i.e.* where an agency was found to have exceeded its statutory authority).  *See* Pls.'s Reply Remedies at 3.  Whether the *Allied-Signal* factors apply here is beside the point.  The decision "whether to remand a rule with or without vacatur is committed to the district court's discretion."  *Am. Waterways Operators v. Wheeler*, 507 F. Supp. 3d 47, 75 (D.D.C. 2020); *Stand Up for California! v. U.S. Department of Interior*, 879 F.3d 1177, 1190 (D.C. Cir. 2018) ("[T]he district court acted well within its discretion in finding vacatur unnecessary to address any harm the defect had caused.").  The factors guide and channel the Court's discretion when deciding the appropriate remedy.  *Am. Hosp. Ass'n v. Azar*, No. CV 18-2841 (RMC), 2019 WL 5328814, at *1 (D.D.C. Oct. 21, 2019) ("Neither factor is dispositive. Rather, resolution of the question turns on the Court's assessment of the overall equities and practicality of the alternatives.").  Plus, in *Citrus HMA, LLC v. Becerra*, No. CV 20-707 (CKK), 2022 WL 1062990 (D.D.C. Apr. 8, 2022), the court applied the *Allied-Signal* factors to remand the matter after concluding that HHS unlawfully adopted an alternative rural floor that deviates from the rural wage index calculation.

[2] In its earlier Memorandum Opinion, the Court concluded that the hospitals possessed standing to challenge the interlinked low wage index hospital policy and the budget neutrality policy.  *See generally* Mem. Op.  The hospitals, however, seek vacatur of just the budget neutrality policy.  *See* Pls.'s Reply Remedies at 11 ("The Hospitals are not seeking vacatur of the low wage index hospital policy, which did not inflate or alter their wage index values.").

As to the first factor, it is of course a serious deficiency if a regulation fails to comply with the applicable statute. As the Court has explained, HHS's low wage index hospital policy conflicts with the clear text of the Medicare statute. *See* Mem. Op. And the interlinked budget neutrality policy does as well. *See id.* But the hospitals seek vacatur of just the budget neutrality policy, *see* Pls.'s Reply Remedies at 11; that is, even they do not seek vacatur of the portion of the rule that, in substantial part, created the inconsistency with the statute. *See generally* Mem. Op. In these unique circumstances, the Court cannot say that the agency's deficiency requires vacatur. *See Citrus HMA, LLC*, No. 20cv707 at *10 (remanding even though the first factor tilts in favor of vacatur because the second factor skews so far in favor of remand); *AARP v. United States Equal Emp. Opportunity Comm'n*, 267 F. Supp. 3d 14, 38 (D.D.C. 2017) (remanding even though the first "factor weighs in favor of vacatur," because "the second factor, the consequences of vacatur, weighs heavily in favor of simply remanding without vacatur").

As to the second factor, vacatur of just the budget neutrality policy poses a serious risk of disruption and confusion. Vacating either or both of the challenged policies would create a regulatory vacuum with respect to payment calculations for fiscal year 2020. Indeed, the agency, at this moment, is in the process of calculating the payment process for that year. *See* Def.'s Remedies at 11. The Court will not force the agency to iron out the numbers against the backdrop of regulatory uncertainty. Simply put, vacating the budget neutrality policy poses a risk of disruption sufficient to warrant remand rather than vacatur.[3]

To sum up, the Court concludes that vacatur of just the budget neutrality policy (*i.e.*, HHS's unlawful 0.2016% payment reduction to Medicare hospital inpatient payments for fiscal year 2020

---

[3] Amici on behalf of a host of hospitals makes a compelling case as to why vacatur would have a harmful impact on healthcare in America's most vulnerable communities. *See* Amicus Br., ECF No. 35.

to pay for the unlawful low wage hospital policy) is not the appropriate remedy in this case. Instead, this case does present one of the limited circumstances warranting remand without vacatur. Plus, remand without vacatur furthers the "substantial deference" "courts owe to [HHS] in the administration of such a complex statutory and regulatory regime." *Shands Jacksonville Med. Ctr., Inc. v. Azar*, 366 F. Supp. 3d 32, 54 (D.D.C. 2018) (quotation omitted).

## IV. Conclusion

For the foregoing reasons, the Court **REMANDS** this matter for further proceedings consistent with this Order.

This is a final appealable order.

DATE: July 27, 2022

CARL J. NICHOLS
United States District Judge